IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMMY DORSEY,                    :
                                 :
        Plaintiff,               :
                                 :        CIVIL ACTION
v.                               :
                                 :        NO. 1:10-cv-679-TWT-ECS
FULTON COUNTY,                   :
                                 :
        Defendant.               :

**FINAL REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**I.**
**Introduction**

On March 9, 2010, Plaintiff Tammy Dorsey ("Plaintiff") filed this civil action against her employer, Fulton County Public Works Department, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). See generally [Doc. 1]. Plaintiff later amended her complaint, [Doc. 4], substituting Fulton County as the defendant. Her amended complaint alleges that after she filed an internal complaint of sexual harassment against a co-worker, Defendant retaliated against her by transferring her to different locations during and after the investigation of her complaint, including a final retaliatory reassignment from an administrative position to manual labor outside in the "field." See generally [Am. Compl.]. Plaintiff seeks injunctive relief, reinstatement to an administrative position, punitive and compensatory damages, and attorney's fees. [Id. at 15-16].

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 60]. The motion, having been fully briefed, is ripe for the Court's consideration. For the reasons discussed herein, **IT IS RECOMMENDED** that the motion, [Doc. 60], be **GRANTED**.

## II.
## <u>Factual Background</u>

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. <u>Frederick v. Sprint/United Mgmt. Co.</u>, 246 F.3d 1305, 1309 (11th Cir. 2001); <u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 920 (11th Cir. 1993). Applying the above legal standard, the Court derives the following facts from the parties' statements of facts ("SMF") and from the record as a whole:[1]

**A.   Background of Plaintiff's Work with Defendant**

On September 12, 2001, Plaintiff began work for the Fulton County Public Works Department (the "Department"). [Def's SMF ¶ 1]. She was hired as a maintenance worker and was assigned to a grass-cutting crew at Defendant's "Stonewall Tell" facility. [Pl's SMF ¶¶ 1-2, 28].

In 2002, Plaintiff was given the duties of an office assistant and was placed under the direct supervision of Administrative Assistant Ms. Gwendolyn Brown Smith. [Pl's SMF ¶ 3]. Plaintiff had her

---

[1]   Unless otherwise noted, the facts are taken from those facts in the parties' SMF that have not been disputed.

2

own desk, computer, direct telephone line, and "an assigned parking spot as did all other administrative employees." [Id. ¶¶ 29-30]. Her title did not change from "Maintenance Worker," but her duties became solely administrative in nature and included answering the phone, ordering and issuing equipment and supplies, delivering payroll checks, performing twice daily mail runs, entering work orders for repairs into the Department's electronic work order system, and performing inventory control. [Id. ¶¶ 30, 32, 34-38]. She performed no manual labor and never did any work included in the County's job description for "Maintenance Worker." [Id. ¶¶ 47, 52].[2] She was the only individual working at Stonewall Tell with the title of "Maintenance Worker" whose assigned duties included administrative duties and inventory control. [Id. ¶¶ 31, 44].

**B.   Alleged Sexual Harassment by Co-Worker Alfred Lewis**

Mr. Alfred Lewis, Construction Manager for the Public Works Department, was transferred to Stonewall Tell in January, 2007. [Ex. 15 to Dorsey Dep.]; [Pl's SMF ¶ 10]. He reported directly to Mr. Victor Robinson, Transportation Manager. [Pl's SMF ¶¶ 8, 10].

At some point between January, 2007 and June, 2007, Mr. Lewis engaged in the following acts towards Plaintiff: he asked Plaintiff

---

[2]    Defendant argues that Plaintiff performed manual labor for what amounts to approximately five percent of the time during which Plaintiff contends she exclusively performed administrative work. [Doc. 72 at 20-21].

whether she found him attractive; he asked Plaintiff why she was not wearing her wedding ring; and he asked Plaintiff where she lived, because he said he had a grass-cutting business on the side and wanted to cut her grass. [Dorsey Dep. at 58:4-11]. Mr. Lewis also told her that he found her attractive, asked a co-worker whether Plaintiff would be willing to "mess around" with him, and asked Plaintiff to visit his office, even though he had no apparent job-related reason for her to be there. [Dorsey Dep. at 62:7-8, 64:17, 65:3-6].

On various occasions, Plaintiff made oral reports of Mr. Lewis's conduct to Ms. Smith and Ms. Smith's direct supervisor, Mr. Robinson. [Dorsey Dep. at 65:19-66:11]; [Ex. 8 to Dorsey Dep.]; [Robinson Dep. at 13-15]. She was assured by Mr. Robinson that he would speak with Mr. Lewis. [Dorsey Dep. at 65:23-25]. However, after her oral reports, Mr. Lewis "continued to direct inappropriate flirtatious attention" towards Plaintiff. [Dorsey Dep. at 67:14-15]. Specifically, Mr. Lewis would sit near Plaintiff in the office and "act as though he was using the phone" but instead would "just look at [Plaintiff]." [Dorsey Dep. at 66:3, 67:23-68:3].

## C. Plaintiff's Complaints and Transfers

On June 6, 2007, Plaintiff submitted a written complaint to Ms. Smith, her direct supervisor, alleging that Mr. Lewis's conduct was in violation of the County's anti-harassment policy. [Def's SMF ¶¶ 94, 96]; [Pl's SMF ¶ 67]; [Ex. 2 to Dorsey Dep.].

4

The County's anti-harassment policy defines sexual harassment as "encompass[ing] a wide variety of activities," and includes, in pertinent part, "unwelcome sexual advances or comments," "sexual innuendo," and "pressure for sexual activity." [Ex. 9 to Dorsey Dep.].

Plaintiff's complaint was passed to two supervisors and then to Ms. Noelle Davis, Human Resources ("HR") Coordinator. [Def's SMF ¶ 96]; [Dorsey Dep. at 72:5-15]. Ms. Davis investigated the allegations, and on July 11, 2007, sent a memorandum detailing her findings to Ms. Alysia Shands, HR Manager. [Def's SMF ¶ 96]; [Pl's SMF ¶ 69]. Ms. Davis found that Mr. Lewis did not violate the County's policy and thus was not subject to disciplinary action. [Pl's SMF ¶ 69]; [Def's SMF ¶ 97]; [Ex. 8 to Dorsey Dep.]. However, she felt that if his conduct were not addressed, his conduct might escalate to the point of sexual harassment. [Pl's SMF ¶ 64]; [Davis Dep. at 97:7-18].

Plaintiff's complaint, along with Ms. Davis's findings, should have been forwarded by the HR Department to the County's Office of Equal Employment Opportunity ("OEEO" or "EEO"). [Def's SMF ¶ 99]. It has "always been" the procedure for the HR Department to forward any complaint to the EEO that "smells like it could be an EEO complaint," and the HR Department had forwarded other sexual harassment complaints involving other parties around this same time. [Pl's SMF ¶¶ 57, 58]; [Davis Dep. at 82:14-19]. However, due to "inadvertent mishandling," the HR Department did not send the EEO any information regarding

5

Plaintiff's complaint. [Def's SMF ¶ 100].[3]

Also around July of 2007, Ms. Davis told Plaintiff that Mr. Lewis "would be advised that he [was] not to have any direct contact" with Plaintiff, and that he should instead communicate with Plaintiff's supervisor, Ms. Smith. [Pl's SMF ¶ 70]; [Dorsey Dep. at 79:21-80:10].

On November 26, 2007, after this directive and on two separate occasions, Mr. Lewis approached Plaintiff with a job-related question instead of approaching Ms. Smith. [Pl's SMF ¶ 71]; accord [Ex. 5 to Dorsey Dep.]. According to Plaintiff, Plaintiff and Mr. Philpot were talking when Mr. Lewis "rudely jumped into the conversation." [Ex. 5 to Dorsey Dep.]. Later that day, Mr. Lewis "walked between [Plaintiff and two coworkers] very rudely and picked up the vehicle sign out sheet," and asked where the key to a truck was. [Id.].

On November 30, 2007, Plaintiff filed a complaint with the County's EEO, alleging sexual harassment and retaliation by Mr. Lewis. [Def's SMF ¶ 103]; [Dorsey Aff. ¶ 19]; [Dorsey Dep. at 99:7-11]. She alleged that Mr. Lewis had violated Ms. Davis's directive from July, 2007, to avoid contact with Plaintiff, that he "continue[d] to

---

[3]    Ms. Davis thought that Ms. Shands had forwarded the materials to the EEO, and Ms. Shands thought that Ms. Davis had handled the matter. [Def's SMF ¶ 99]. The EEO eventually received Plaintiff's complaint at a later, unspecified date. [Pl's SMF ¶ 72]. How the EEO obtained Plaintiff's complaint is not clear, but apparently the HR Department was not involved. See [Pl's Decl. ¶ 20] (My complaint[] [was] eventually forwarded to the OEEO without the knowledge of anyone in the [HR] Department.").

intimidate and harass" her, and that he was "retaliating against [her] because of the prior complaint that [she] made against him." [Exs. 5, 15 to Dorsey Dep.]; [Pl's SMF ¶ 71]; [Dorsey Dep. at 112:15-18].

Plaintiff's EEO complaint was assigned to Ms. Lesley Troope, County EEO officer, for investigation. [Pl's SMF ¶ 73].

On December 3, 2007, Defendant transferred Plaintiff to its Cochran Road facility while the EEO investigated the complaint. [Def's SMF ¶ 106]; [Ex. 15 to Dorsey Dep.]. Mr. Richard Coates, Assistant Director of the Department, authorized Mr. Robinson to effect the transfer. [Def's SMF ¶¶ 110-11]. Mr. Coates stated that he decided to transfer Plaintiff instead of Mr. Lewis because that was "the least disruptive to the overall operation" and "business needs" of the Stonewall Tell facility. [Coates Dep. at 52:14-16, 59:19].

On December 4, 2007, the EEO notified the Department that the Department "had made a mistake in transferring Plaintiff to the Cochran Road Facility." [Def's SMF ¶ 112].

On December 5, 2007, Plaintiff amended her EEO complaint to include an allegation of retaliation by Mr. Coates and Mr. Robinson in the Cochran Road transfer. [Exs. 6, 15 to Dorsey Dep.].

Her amended EEO complaint also mentioned her "total disbelief" that the Department had not found any wrongdoing by Mr. Lewis in its July, 2007, investigation of Plaintiff's internal complaint. [Ex. 15 to Dorsey Dep.]. She "felt victimized and unprotected in [her] work

7

environment that Mr. Lewis was not discipline[d] for his actions," writing that "[e]ven after it was made clear to Mr. Lewis not to have any direct contact with [Plaintiff,] he continued to approach [Plaintiff] . . . and [gave her] intimidating looks." [Id. at 2].

On December 6, 2007, Plaintiff met with Ms. Shands from HR and Ms. Troope from the EEO regarding the Cochran Road transfer. She was told that Mr. Lewis was needed at Stonewall Tell because of his supervisory position, and was offered five locations for the temporary reassignment, including Cochran Road, the facility to which she had been transferred two days earlier. [Ex. 11 to Dorsey Dep.]; [Dorsey Dep. at 129:23-130:1]. She initially rejected all five options, but reported to Cochran Road the next day. [Def's SMF ¶ 115].

While at the Cochran Road facility, she worked under administrator Andrea Searles and continued to perform administrative work. [Def's SMF ¶¶ 108-09, 118]; [Pl's SMF ¶ 53].

On February 11, 2008, Plaintiff asked Ms. Troope to be transferred back to Stonewall Tell, her "original location." [Ex. 17 to Dorsey Dep.]. She told Ms. Troope that she did not understand "why Mr. Lewis was not moved from the beginning [since] he is the aggressor." [Id.]. She stated that she was "mentally stress[ed] out" and that her commute had "really become a problem" due to her household finances and vehicle wear and tear. [Id.].

On March 10, 2008, Plaintiff was transferred to the South Fulton

8

Annex South Service Center until the EEO's investigation of her complaint was completed. [Def's SMF ¶ 125]. The South Annex is located directly across the street from Stonewall Tell. [Id. ¶ 126].

While working at the South Annex, Plaintiff performed administrative work under Assistant Manager Ms. Vanessa Clark. [Def's SMF ¶ 128]; [Pl's Resp. to Def's SMF ¶ 129]; [Pl's SMF ¶ 53].

On March 24, 2008, the EEO completed its review of Plaintiff's complaint, and issued a "Case Summary Report" in which it concluded that Mr. Lewis's conduct constituted sexual harassment under the County's anti-harassment policy. [Def's SMF ¶¶ 130-31]; [Ex. 12 to Parker Dep., 96-1 at 111]. The EEO recommended that Mr. Lewis be terminated for the conduct. [Def's SMF ¶ 131]. The EEO also found that the Department had violated the County's anti-harassment policy by "failing to promptly refer [Plaintiff] to OEEO for proper, prompt, fair and impartial processing of her EEO-related workplace concerns," [Ex. 12 to Parker Dep., 96-1 at 111-12], and that the Department had retaliated against Plaintiff in violation of the EEOC when Mr. Coates and Mr. Robinson transferred Plaintiff to Cochran Road on December 3, 2007, four days after she filed her first EEO complaint.[4] [Id. at 113-

---

[4] Specifically, the EEO cited to EEOC Enforcement Guideline 915.002, which states that an involuntary transfer of a complainant "*could* constitute unlawful retaliation." Enforcement Guideline on Vicarious Employer Liability for Unlawful Harassment by Supervisors, *available at* www.eeoc.gov/policy/docs/harassment.html.

AO 72A
(Rev.8/82)

14]. The EEO recommended that Plaintiff be "immediately relocate[d] . . . back to her position" at Stonewall Tell, and that "appropriate disciplinary action" be taken against Mr. Coates and Mr. Robinson. [Id. at 115]. The EEO requested that the Department implement the recommendations within 30 days and to "advise the [EEO office] accordingly." [Id.].

On April 28, 2008, Ms. Angela Parker, Director of the Public Works Department, filed a response to the Case Summary Report on behalf of the Department, disputing a number of the EEO's findings. [Def's SMF ¶ 133]; [Ex. 16 to Parker Dep.].

On October 17, 2008, the EEO issued a "Notification of Determination," concluding that there had been a violation of the County's "Anti-Harassment/Sexual Harassment Policy and/or Prejudicial Acts Policy." [Pl's SMF ¶¶ 82-83]; [Ex. 17 to Parker Dep.]. The EEO recommended that Ms. Parker "take corrective action" as specified in the EEO's March, 2008, "Case Summary Report." [Ex. 17 to Parker Dep.].

Accordingly, on December 10, 2008, Ms. Parker sent Mr. Lewis a written warning, notifying him that his conduct had violated the County's Policy and Procedures against sexual harassment. [Ex. 15 to Parker Dep.]. She required that he attend sexual harassment training, prepare a written summary of the training, and follow up with an EEO officer. [Id.]; [Pl's SMF ¶ 86]. After Mr. Lewis complied with Ms. Parker's instructions, Ms. Parker sent the EEO a "Compliance Summary,"

10

detailing the above actions taken by the Department in response to the EEO's directive. [Pl's SMF ¶¶ 86-89]; [Ex. 13 to Parker Dep.].

On December 23, 2008, Ms. Parker notified Plaintiff that she was being reassigned back to Stonewall Tell, effective December 29, 2008. [Def's SMF ¶ 134]; Pl's Resp. to Def's SMF ¶ 134]; [Ex. 19 to Dorsey Dep.]. At Stonewall Tell, Plaintiff was assigned to perform manual labor under Mr. Robinson. [Pl's SMF ¶¶ 118-19]; [Ex. 19 to Dorsey Dep.]. This work – termed "field maintenance work" – was "much dirtier and more dangerous" than the administrative work she had been performing. [Pl's Decl. ¶ 29]; accord [Pl's SMF ¶¶ 117-19].

The reason for Plaintiff's reassignment to "field maintenance work" is disputed. Defendant argues that the first reassignment – away from Stonewall Tell in December of 2007 – was merely a temporary measure pending the completion of the EEO investigation. [Ex. 21 at 3 to Parker Dep.]. Thus, when the EEO investigation ended one year later, in December of 2008, Plaintiff was reassigned back to her original facility, Stonewall Tell. [Id.]. Defendant maintains that at that point, because of a budget shortfall within the Department, "Maintenance Workers were no longer needed to perform inventory and key control of maintenance equipment." [Doc. 60 at 17]. Therefore, according to Defendant, Plaintiff was no longer needed to perform inventory control. Defendant also argues that Plaintiff "was aware that her assignment to handle key control and inventory equipment was

11

temporary because of the volume of maintenance equipment." [Id.].

Plaintiff disputes that she knew the assignment to perform inventory control was temporary, arguing that she was assured in 2002 that her position "inside" was permanent. [Doc. 72 at 11]; [Dorsey Dep. at 136:3-8]. She also disputes that the reduction-in-force affected any maintenance workers. [Pl's Resp. to Def's SMF ¶ 135]. She claims that her reassignment to field maintenance work "was unlawful retaliation for her reporting Lewis's behavior." [Doc. 72 at 6].

On January 13, 2009, Plaintiff filed a charge of discrimination with the EEOC. [Def's SMF ¶ 148]; [Ex. 14 to Dorsey Dep.]. Her charge alleged retaliation under Title VII for her reassignment to field maintenance work by Defendant on December 29, 2008, after her November 30, 2007, EEO complaint of sexual harassment. [Ex. 14 to Dorsey Dep.].[5]

**D.  Plaintiff's Lawsuit**

On March 9, 2010, Plaintiff filed the instant suit in connection with the above facts, alleging retaliation in violation of Title VII. [Doc. 1]. On September 8, 2011, Defendant filed the instant motion for summary judgment. [Doc. 60]. Having been fully briefed, the matter is ripe for the Court's consideration.

---

[5]      According to Plaintiff's complaint, she is still employed by the Fulton County Public Works Department. [Doc. 1 ¶ 4].

**III.**
**Summary Judgment Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986)). The substantive law applicable to the case determines which facts are material. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Four Parcels, 941 F.2d at 1437-38. If the moving party fails to discharge this initial burden, the motion must be denied. Fitzpatrick v. City of Atlanta, 2 F.3d 112, 1116 (11th Cir. 1993). If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." Celotex, 477

U.S. at 324 (citing Fed. R. Civ. P. 56).

# IV.
## Initial Procedural Matters

### A.  Timeliness

Defendant argues that Plaintiff's summary judgment response, Declarations in support of her response, and Statement of Material Facts should not be considered because they were filed one, two, and nine days late, respectively. [Doc. 88 at 1-3].

The Court may, "*in its discretion*, decline to consider untimely briefs." Aminter, LLC v. MacDermid Printing Solutions, LLC, 1:09-cv-2-JOF, 2010 WL 1409662 at *1 (N.D. Ga. Apr. 2, 2010) (citing LR. 7.1(F), NDGa.) (emphasis added). A "strong federal policy favors resolution of disputes on the merits as opposed to disposition on technicalities." Snow v. Bellamy Mfg. & Repair, 1:94-cv-957-JTC, 1995 WL 867859 at *2 (N.D. Ga. Sep. 26, 1995). Furthermore, regardless of whether a motion for summary judgment is opposed, a court "must consider the merits of the motion." United States v. One Piece of Real Prop., 363 F.3d 1099, 1101 (11th Cir. 2004). Thus, where a movant is not prejudiced by a respondent's untimely response to a motion for summary judgment, a court should "consider [an untimely response] for whatever value it may have in assisting the court in determining whether . . . there is a genuine issue of material fact to be tried." Orr v. Orbis Corp. (Wisc.), 1:07-cv-2653-TWT-SSC, 2010 WL 3368124 at

14

*2 (N.D. Ga. July 30, 2010) (citing <u>Snow</u>, 1995 WL 867859 at *2).

Here, Defendant does not contend, and this Court does not find, that Defendant would suffer any undue prejudice should the Court consider the documents that were filed one, two, and nine days out of time. <u>Snow</u>, 1995 WL 867859 at *2 (no prejudice where response filed three days out of time). Accordingly, Defendant's objection to the admissibility of Plaintiff's summary judgment response, Declarations in support of her response, and Statement of Material Facts is **OVERRULED** insofar as it is based on the untimeliness of the filings. <u>Id.</u>

**B.  Abandonment**

In her summary judgment response, Plaintiff affirmatively abandons her claim for punitive damages. [Doc. 72 at 1 n.1]. Claims raised in the complaint but not briefed before the Court in response to a summary judgment motion may be deemed abandoned. <u>Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1326 (11th Cir. 2000). Accordingly, **IT IS RECOMMENDED** that summary judgment be **GRANTED** as to Plaintiff's claim for punitive damages.

**V.**
**Plaintiff's Retaliation Claim**

Remaining for this Court's consideration is whether Plaintiff has presented a triable issue of fact on her retaliation claim under Title VII. In her summary judgment response, Plaintiff explicitly "limits

15

her Title VII retaliation claim" to two distinct claims: (1) "a retaliation claim based upon her opposition to an unlawful employment action" when she was reassigned from administrative duties to outside field work in December of 2008; and (2) "a participation retaliation claim based upon the continued harassment and retaliatory acts" that she endured after filing an EEOC charge in January of 2009. [Doc. 72 at 1].[6] For the reasons discussed below, **IT IS RECOMMENDED** that summary judgment be **GRANTED** as to both of the retaliation claims.

## A. Prima Facie Retaliation Claim

It is unlawful under Title VII for an employer "to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-(3)(a). The former clause is known as the "opposition clause"; the latter, the "participation clause." Hudson v. Norfolk S. R.R. Co., 209 F. Supp. 2d 1301, 1308 (N.D. Ga. 2001).

To make a prima facie showing of retaliation under Title VII, Plaintiff must present evidence showing that (1) she engaged in

---

[6] Accordingly, a claim for retaliation based upon any other alleged protected activities should be **DEEMED ABANDONED**. Marijuana Prohibition, 219 F.3d at 1326.

statutorily protected conduct; (2) she suffered from an adverse action; and (3) a causal connection existed between the statutorily protected conduct and the adverse action. <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008); <u>Drago v. Jenne</u>, 453 F.3d 1301, 1307 (11th Cir. 2006) (internal citations omitted); <u>Coutu v. Martin Cnty. Bd. of Comm'rs</u>, 47 F.3d 1068, 1073 (11th Cir. 1995). If Plaintiff makes this prima facie showing, the burden shifts to Defendant to rebut the presumption of retaliation by showing legitimate, non-retaliatory reasons for the adverse action, which in turn requires Plaintiff to come forward with evidence that the reasons were pretext for retaliation. <u>Goldsmith</u>, 513 F.3d at 1277 (internal citation omitted); <u>Drago</u>, 453 F.3d at 1307; <u>Coutu</u>, 47 F.3d at 1075 n.54.

**B.  Plaintiff's Retaliation Claim Under the Opposition Clause**

Construed in the light most favorable to Plaintiff, the unlawful employment practices opposed by Plaintiff would be (1) Mr. Lewis's sexual harassment of Plaintiff; and (2) Defendant's mishandling of Plaintiff's internal complaint of harassment by Mr. Lewis. <u>See</u> [Doc. 72 at 16].[7] Plaintiff did not, however, have an objectively reasonable

---

[7]  In her summary judgment response, Plaintiff also states in passing that her internal complaint of discrimination included a complaint about Mr. Lewis's "retaliatory conduct." [Doc. 72 at 16]. Plaintiff does not, however, accompany this statement with any supportive argument. Accordingly, the undersigned does not consider whether Plaintiff had an objectively reasonable belief that she

17

belief that she was opposing conduct made unlawful under Title VII,
for the reasons discussed below.

Under the opposition clause, an employee is protected from
discrimination if she opposes an employer's unlawful practice. 42
U.S.C. § 2000e-(3)(a). See also Clover, 176 F.3d at 1350. When a
plaintiff proceeds under the opposition clause, she must show that she
had "a good faith, reasonable belief that the employer was engaged in
unlawful employment practices." Howard v. Walgreen Co., 605 F.3d 1239,
1244 (11th Cir. 2010) (citing Little v. United Tech., Carrier
Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).

To meet this burden, a plaintiff must show "both that [s]he
subjectively believed that [Defendant] engaged in unlawful
discrimination and that her belief was objectively reasonable in light
of the facts and record present." Howard, 605 F.3d at 1244 (citing
Little, 103 F.3d at 960). Defendant does not dispute that Plaintiff
subjectively believed that Defendant engaged in the unlawful
employment practices alleged above – Mr. Lewis's sexual harassment of
Plaintiff and Defendant's mishandling of Plaintiff's internal sexual

opposed unlawful conduct when she complained of Mr. Lewis's alleged
retaliation because she "chose not to develop [this argument] . .
. at the time of the summary judgment motion[]." Johnson v. Bd. of
Regents of Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001) (non-
moving party abandoned an argument at the summary judgment stage
where party failed to set forth "specific facts" in support of the
argument to "show[] that there [was] a genuine issue for trial").

harassment complaint. [Doc. 88 at 5]. Accordingly, the Court need only determine whether Plaintiff had an objectively reasonable belief that Defendant engaged in unlawful employment practices.

To show objective reasonableness, Plaintiff "need not prove that the conduct [s]he opposed was actually unlawful, . . . but the reasonableness of [her] belief that [Defendant] engaged in an unlawful employment practice must be measured against existing substantive law" at the time of the offense. Howard, 605 F.3d at 1244 (citing Little, 103 F.3d at 960 (11th Cir. 1997)); accord Clover, 176 F.3d at 1351. Where the conduct opposed is not actually unlawful, the conduct must be "close enough" to unlawful conduct. Clover, 176 F.3d at 1351. Thus, "[w]here binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of [the Eleventh Circuit] or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary believe that the practice is unlawful is unreasonable." Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1214 (11th Cir. 2008) (citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 & n.2 (11th Cir. 1998)). See also Vinson v. Dep't of Corr., Fla., 672 F. Supp. 2d 1247, 1255 (N.D. Fla. 2009) ("[I]n analyzing the reasonableness of [a] plaintiff's opposition to alleged discrimination and retaliation, the Court will apply the substantive law of the Eleventh Circuit as it existed at the time the alleged [conduct] took

19

place.").

### 1. Opposition to Mr. Lewis's Alleged Sexual Harassment

In her summary judgment response, Plaintiff argues she had an objectively reasonable belief that Mr. Lewis "was engaged in inappropriate behavior prevented by the County's sexual harassment policy" due to the occurrence of the following events:

> (1) Lewis's position as a high-ranking supervisor; (2) his attempts to find out her home address; (3) his requests to have her come alone to his work location and his unwillingness to identify any business reason for his requests; (4) his questions about Plaintiff's willingness to "mess around"; (5) his statements to Plaintiff that he and his wife had an open marriage; (6) his questions to Plaintiff regarding how attractive she found him; (7) his belligerence when Plaintiff refused to partake in his conduct and his threats to place her back in the field; (8) his unwillingness to direct all communications to Plaintiff through her supervisor; and (9) his attempts to interfere with Plaintiff's job and have her terminated.

[Doc. 72 at 16-17]. She argues that objective reasonableness is shown by the EEO's finding that the above conduct by Mr. Lewis "indeed violated the County's sexual harassment policy." [Id.].

These events, which include sexually suggestive comments by Mr. Lewis, may indeed have violated the County's anti-harassment policy. However, the fact that the County's EEO found a violation of the County's anti-harassment policy - which appears to be the crux of Plaintiff's objective reasonableness argument - is of no consequence. A plaintiff must show an objectively reasonable belief that she was opposing conduct *made unlawful by Title VII* - not that she was

20

opposing conduct that violated a county's sexual harassment policy.
See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279
(11th Cir. 2003) ("Not all forms of conduct that may be described as
'harassment' . . . affect a 'term, condition, or privilege' of
employment within the meaning of Title VII"); Henderson v. Waffle
House, Inc., 238 F. App'x 499, 503 (11th Cir. 2007) (EEOC's finding
that plaintiff was subjected to "verbal sexual harassment" and that
"the evidence supported a violation of Title VII" insufficient to show
severe and pervasive conduct because the EEOC "did not explicitly
make this finding and provided no analysis that would support such a
finding");[8] Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1372
(N.D. Ga. 2006) (that an employer may have "adopted a more restrictive
policy" regarding sexual harassment is irrelevant to the determination
of whether a plaintiff had an objectively reasonable belief that the
challenged conduct violated Title VII).

Here, the facts upon which Plaintiff relies do not show that she

---

[8] Indeed, in the instant case, in finding that Mr. Lewis's
conduct violated the County's anti-harassment policy, the EEOC
specifically noted that "the Department failed to appreciate that
the County's anti-harassment policy and procedure encourages the use
of progressive disciplinary action to address low level prohibited
conduct not sufficiently severe and pervasive to violate federal
law." [Doc. 96-1 at 97 n.18]. The EEOC made no findings as to
whether Mr. Lewis's conduct constituted severe and pervasive sexual
harassment prohibited by Title VII.

was subjected to a hostile work environment.[9] To hold an employer liable under Title VII for a hostile environment created by a supervisor or a co-worker, a plaintiff must show, among other things, that the harassment was sufficiently objectively and subjectively severe or pervasive to alter the conditions of her employment and create an abusive working environment.[10] <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993); <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65-67 (1986); <u>Walton v. Johnson & Johnson Servs., Inc.</u>, 347 F.3d 1272, 1279-80 (11th Cir. 2003); <u>Clover</u>, 176 F.3d at 1351.

The undersigned pauses to note that the standard for so-called quid pro quo sexual harassment is not applicable to this case, despite Plaintiff's allegation that Mr. Lewis threatened to place her back in the field - an allegation that could appear, at first blush, to suggest quid pro quo sexual harassment. Quid pro quo sexual harassment occurs when "submission to [unwelcome sexual] conduct is made either

---

[9]    In her brief, Plaintiff does not argue that Mr. Lewis's conduct rose to actionable hostile work environment sexual harassment made unlawful by Title VII, nor does she cite any case law to that effect. Nevertheless, the undersigned will consider whether Mr. Lewis's conduct constituted hostile work environment sexual harassment in assessing whether Plaintiff's beliefs were objectively reasonable.

[10]    In its summary judgment argument regarding hostile work environment, Defendant argues only that Plaintiff has not shown that Mr. Lewis's conduct was severe or pervasive. [Doc. 60 at 9-13]. Accordingly, the undersigned will address only whether Mr. Lewis's conduct was severe or pervasive.

22

explicitly or implicitly a term or condition of an individual's employment" or "submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual." 29 C.F.R. § 1604.11(a). See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998). But because any threats that Mr. Lewis allegedly made to Plaintiff were unfulfilled at the time she complained to the EEO, Plaintiff must show that the conduct was severe and pervasive. See Burlington, 524 U.S. at 754 ("Because [Plaintiff]'s claim involves only unfulfilled threats, it should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct."); accord Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1312 n.1 (11th Cir. 2001) (citing Ellerth, 524 U.S. at 751-53). At the time of her EEO complaints, Plaintiff alleged that Mr. Lewis "criticized her work performance to others and advocated the elimination of [her] job position," [Doc. 96-1 at 112], but Plaintiff did not allege that these threats materialized into any tangible employment action against her. See Anduze v. Fla. Atl. Univ., 151 F. App'x 875, 879 (11th Cir. 2005) (alleged retaliatory conduct that followed grievances could not form the basis of protected activity under the opposition clause).

Thus, having established the proper standard under which to analyze the objective reasonableness of Plaintiff's sexual harassment claim, the Court turns to a consideration of whether the harassment

23

could be considered to be severe or pervasive. When determining whether harassment is objectively severe or pervasive, courts consider the frequency of the conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere "offensive utterance"; and whether the conduct unreasonably interferes with the plaintiff's job performance. <u>Johnson v. Booker T. Washington Broad. Serv., Inc.</u>, 234 F.3d 501, 509 (11th Cir. 2000) (citing <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1246 (11th Cir. 1999)). Thus, conduct amounting to a "'continuous barrage of sexual harassment'" towards the plaintiff is considered severe or pervasive. <u>Johnson</u>, 234 F.3d at 509 (unwanted massages, harasser's body parts touching plaintiff's body from behind, and thirteen other instances of conduct during four months, all of which resulted in plaintiff's inability to get along with her on-the-air co-host, was severe or pervasive) (citing <u>Dees v. Johnson Controls World Servs., Inc.</u>, 168 F.3d 417, 418 (11th Cir. 1999)). But conduct that occurs infrequently during a period of several months and involves isolated events of physical contact is not sufficiently severe or pervasive, unless the isolated incidents are "extremely serious." <u>Faragher v. City of Boca Raton, Fla.</u>, 524 U.S. 775, 788 (1988). <u>See, e.g.</u>, <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 585 (11th Cir. 2000) (supervisor's staring at plaintiff twice, touching her ring and bracelet once, asking her to lunch repeatedly, and making flirtatious comments was not severe or pervasive conduct

24

because the conduct was not physically threatening or humiliating and occurred infrequently during a period of several months); <u>Mendoza</u>, 195 F.3d at 1247-49 (supervisor's rubbing his hip on plaintiff's hip, telling her "I'm getting fired up," twice looking at her groin area while making a sniffing sound, and "constantly" staring at her and following her during 11-month period insufficient to sustain hostile work environment sexual harassment claim).

In this case, Mr. Lewis's conduct did not rise to the level of actionable hostile work environment sexual harassment. His conduct, which involved a handful of incidents over the course of several months, was far from a "continuous barrage of sexual harassment," <u>Dees</u>, 168 F.3d at 418, and therefore was nowhere near actionable conduct. <u>See</u> <u>Gupta</u>, 212 F.3d at 584 (holding that "isolated utterances" regarding sexual promiscuity and generalized comments about women made during a period of several months was not severe or pervasive conduct). None of Mr. Lewis's conduct - all of which consisted of oral comments - could be considered physically threatening or humiliating, nor has Plaintiff alleged that it was physically threatening or humiliating. <u>Compare</u> <u>Johnson</u>, 234 F.3d at 509 (unwanted massages, touching of body parts, and pulling pants to reveal imprint of private parts was physically threatening and humiliating) <u>with</u> <u>Gupta</u>, 212 F.3d at 584 (touching plaintiff's knee, hem of her dress, ring, and bracelet one time each was not physically

25

threatening or humiliating). Mr. Lewis's questions about Plaintiff's willingness to "mess around" and whether she found him attractive, his attempt to find out her home address,[11] his requests to have her come alone to his work location without identifying any business purpose, and his statement that he and his wife had a open marriage all constitute "intersexual flirtation [that] is part of ordinary socializing in the workplace and should not be mistaken for discriminatory 'conditions of employment.'" Gupta, 212 F.3d at 584 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). And though Plaintiff's complaint alleges that Mr. Lewis's conduct "interfere[d] with her ability to do her job," [Am. Compl. ¶ 12], she fails to offer any facts in support of how her job performance was affected.

Even if Plaintiff's conclusory allegations of the impact of Mr. Lewis's conduct on her job performance were sufficient at the summary judgment stage, "a plaintiff's subjective feelings and personal reactions are not the complete measure of whether conduct is of a nature that it interferes with job performance. . . . The standard does have an objective component . . . ." Gupta, 212 F.3d at 586. Upon

---

[11]     Plaintiff testified that Mr. Lewis "tried to come out and cut [her] grass, wanted to know where [she] lived" because he had an outside grass-cutting business. [Dorsey Dep. at 58:8-11]. Thus, while the comment may have been threatening to Plaintiff, it is doubtful the comment was sexual, but the undersigned will assume that it was for the present purposes. See Gupta, 212 F.3d at 584.

application of the objective component, the undersigned finds that the statements made by Mr. Lewis would not have interfered with a reasonable employee's performance of her job. <u>See, e.g.</u>, <u>id.</u> (supervisor's calling plaintiff beautiful, and repeated touching, asking out to lunch, and calling plaintiff on her home phone would not have interfered with a reasonable employee's job performance).

In light of all of the above facts, Mr. Lewis's conduct was not severe or pervasive. Nor was it "close enough to support an objectively reasonable belief" in light of existing Eleventh Circuit precedent. <u>Clover</u>, 176 F.3d at 1351. In <u>Clover</u>, an assistant vice-president's frequent visits to employee's work area and phone calls without any business purpose, calls on personal beeper during work hours, knocks on her work area door where he "dart[ed] behind the door out of sight" if any other employees looked up, and a general "flirting kind of style" with employee did not make plaintiff's belief of sexual harassment objectively reasonable. <u>Id.</u> The <u>Clover</u> court described the conduct as "miss[ing] the mark [for actionable sexual harassment] by a country mile." <u>Id.</u>

Here, Plaintiff alleges similar conduct to the conduct in <u>Clover</u> - Mr. Lewis's frequent visits without a business purpose; and Mr. Lewis's flirtatious manner with Plaintiff. Under <u>Clover</u>, Mr. Lewis's conduct falls well below the threshold for actionable sexual harassment. This is true even upon consideration of Plaintiff's

27

additional allegations - that Mr. Lewis asked a coworker whether Plaintiff was willing to "fool around"; told Plaintiff that he and his wife had an open marriage; asked Plaintiff how attractive she thought he was; and threatened to place Plaintiff back in the field when she asked him to stop making comments to her. The few oral comments Mr. Lewis made, while ill-advised, constitute "intersexual flirtation [that] . . . should not be mistaken for discriminatory 'conditions of employment.'" <u>Gupta</u>, 212 F.3d at 584. <u>See also</u> <u>id.</u> at 585; <u>Mendoza</u>, 195 F.3d at 1247-49. Moreover, that Mr. Lewis was a high ranking supervisor "does not make [Plaintiff]'s belief objectively reasonable." <u>Clover</u>, 176 F.3d at 1351. The conduct does not constitute sexual harassment, "regardless of the relative positions of the employees involved." <u>Id.</u> Accordingly, it appears in this case that "Eleventh Circuit precedent in existence at th[e] time . . . established <u>directly</u> that most of [Mr. Lewis]'s conduct towards [the Plaintiff] was not severe." <u>Gross-Jones v. Mercy Med.</u>, --- F. Supp. 2d ----, 2012 WL 2126959 at *12 (S.D. Ala. June 11, 2012) (citing <u>Mendoza</u>, 195 F.3d at 1248-49, <u>and</u> <u>Gupta</u>, 212 F.3d at 578-79, 584-86) (emphasis added).[12] Because Mr. Lewis's behavior fell well below the

---

[12] The alleged conduct was also not severe when compared with the conduct in other Eleventh Circuit cases. <u>See, e.g.</u>, <u>Agee v. Potter</u>, 216 F. App'x 837, 840 (11th Cir. 2007) (supervisor's "shouting at [plaintiff] in a 'dehumanizing' manner," speaking to plaintiff "in an 'elevated voice'" and "threatening [plaintiff] by saying 'I know what I'm gonna do for you now. I'm gonna take care

AO 72A
(Rev.8/82)

threshold for actionable severe or pervasive conduct, Plaintiff did not have an objectively reasonable belief that she was opposing unlawful conduct under Title VII. See Henderson v. Waffle House, Inc., 238 F. App'x 499, 503 (11th Cir. 2007) (no objectively reasonable belief of an unlawful employment practice where alleged sexually harassing conduct involved manager who pulled plaintiff's hair, called her "Dolly," remarked on her breast size more than once by saying "you just look like you're going to burst," and told her that they did not make aprons "big enough for people with boobs" like hers) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions' of employment.")).

Finally, Plaintiff argues that objective reasonableness was supported by the fact that "Plaintiff received exactly what Lewis had threatened her with" when she was placed into the field and by the fact that Ms. Davis in HR concluded that Mr. Lewis's conduct did not amount to Title VII harassment but nevertheless believed that Mr.

---

of you" were "not sufficiently severe or pervasive"); Mitchell v. Pope, 189 F. App'x 911, 914 n.3 (11th Cir. 2006) (conduct not actionable sexual harassment where supervisor tried to kiss plaintiff, told her "your ass sure does look fine," appeared "several times" in her driveway, rubbed up against her, asked her over the office phone if she was naked, came into the women's restroom while plaintiff was inside, and called her a "frigid bitch" when she refused his advances).

Lewis's actions might escalate to the level of sexual harassment if he was not stopped. [Doc. 72 at 17 n.18]. As for Mr. Lewis's alleged threats to place her back in the field, those threats cannot form the basis for objective reasonableness because Plaintiff had not been placed back into the field at the time Plaintiff opposed his harassment by making her complaints. Anduze, 151 F. App'x at 879 (grievances that preceded the conduct later complained of could not form the basis for objective reasonableness of unlawful discrimination). Likewise, Ms. Davis's testimony in her deposition that she believed Mr. Lewis's conduct might escalate into sexual harassment provides no substantial support. First, Ms. Davis's testimony actually helps Defendant since she too did not believe that Mr. Lewis's actions violated the law. Secondly, her observations were speculative, even if valid. Indeed, an employee seeking protection from retaliation must have an objectively reasonable belief that a Title VII violation *has happened* or is *already in progress*, not that a hypothetical, future violation may occur. Jordan v. Alt. Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006), cert. denied, 547 U.S. 1041 (2006). Nothing within Plaintiff's complaints to Defendant or to the EEO regarding Mr. Lewis's conduct addressed an unlawful employment practice that had already occurred or was already in progress; accordingly, "no rational jury could find [Plaintiff]'s belief that [her] opposition to [Mr. Lewis's conduct] constituted opposition to

30

an unlawful employment practice to be objectively reasonable." <u>Little</u>, 103 F.3d at 960; <u>accord</u> <u>Butler</u>, 536 F.3d at 1214.

Accordingly, for all of the above-stated reasons, Plaintiff has failed to meet the prima facie showing for her claim for retaliation under the opposition clause, insofar as her claim relates to Mr. Lewis's alleged sexual harassment, because she cannot show that her belief that she was opposing unlawful sexual harassment was objectively reasonable.

### 2. Opposition to Defendant's Handling of the Sexual Harassment Complaint

Plaintiff alleges that she amended her EEO complaint to include an allegation that Defendant "knowingly violated" the County's policies and procedures "by failing to promptly refer her intra-departmental sexual harassment complaint" to the EEO and by "falsely telling her that Lewis had been notified of her complaint, counseled as to his unwanted actions and comments, and . . . directed to avoid further contact with her." [Am. Compl. ¶¶ 36-37]. Likewise, in her summary judgment response, in arguing that she had an objectively reasonable basis that she was opposing unlawful conduct when she complained of Mr. Lewis's conduct, she asserts that her "additional complaints about management's failure to handle her complaint properly were also corroborated, and the managers and human resources staff were chastised and corrective action . . . was recommended." [Doc. 72

31

at 17].

In a retaliation case, an employee can establish that she suffered from an adverse action by showing that the challenging action would have been "materially adverse" to a reasonable employee, such that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted); <u>accord</u> <u>Chapter 7 Tr. v. Gate Gourmet, Inc.</u>, 683 F.3d 1249, slip op. at *9 (11th Cir. 2012).

In this case, however, Plaintiff's allegation of mishandling fails because Plaintiff has not shown that she suffered any materially adverse action as a result of the mishandling. Defendant's failure to investigate Plaintiff's complaint sooner did not result in any adverse action because it did not result in any action "taken against [plaintiff] herself." <u>Entrekin v. City of Panama City, Fla.</u>, 376 F. App'x 987, 995 (11th Cir. 2010) (no adverse action when defendant failed to investigate plaintiff's sexual harassment complaint against one coworker and failed to sustain her complaint against another coworker because "the plaintiff herself must suffer an adverse employment action"). At most, the record reveals that Plaintiff endured two brief encounters with Mr. Lewis in the time between her internal complaint against Mr. Lewis in early June of 2007 and her filing of the EEO charge in late November of 2007. On one day, Mr.

32

Lewis "rudely jumped into the conversation" with Plaintiff and her supervisor, and later "came back" to talk to Plaintiff. [Ex. 5 to Dorsey Dep.]. Construing the facts in the light most favorable to Plaintiff, Defendant's mishandling of Plaintiff's sexual harassment complaint did not result in an adverse action against Plaintiff herself because the mishandling "amount[ed] to mere 'trivial harm[]' and a "'petty slight[]' that would not dissuade a reasonable worker from making or supporting a charge of discrimination." Entrekin, 376 F. App'x at 995 (citing Burlington, 548 U.S. at 68). Accordingly, insofar as Plaintiff's complaint of Defendant's mishandling of her internal complaint of sexual harassment is concerned, Plaintiff did not have an objectively reasonable belief that she was opposing an unlawful employment action.

Because Plaintiff cannot show that she opposed any unlawful employment practices under the meaning of Title VII, Plaintiff's retaliation claims under the opposition clause fails as a matter of law. See Howard, 605 F.3d at 1245 (holding that retaliation claim failed as a matter of law where plaintiff did not show that he had an objectively reasonable belief that he suffered a materially adverse action); Butler, 536 F.3d at 1214 (plaintiff's retaliation claim for reporting two racial epithets failed as a matter of law "for want of an objectively reasonable belief that reporting [a co-worker]'s offensive language amounted to an unlawful employment practice by

33

[defendant]"); <u>Akins v. Fulton Cnty., Ga.</u>, 420 F.3d 1293, 1303 (11th Cir. 2005) (plaintiff "cannot succeed in establishing her entitlement to relief" on a summary judgment motion where she "fail[s] to allege facts sufficient to allow a trier of fact to conclude that th[e] employment action was adverse"); <u>Sherk</u>, 432 F. Supp. 2d at 1373-74 (adopting magistrate's recommendation to grant summary judgment to defendant where plaintiff did not present evidence showing she had an objectively reasonable belief that she was opposing a violation of Title VII, even where she alleged that she had direct evidence of retaliatory intent). The undersigned therefore **RECOMMENDS** that summary judgment be **GRANTED** as to Plaintiff's retaliation claim under the opposition clause, contained in 42 U.S.C. § 2000e(3)(a).

## C. Plaintiff's Retaliation Claim Under the Participation Clause

Plaintiff alleges that, after she filed her EEOC charge on January 13, 2009, she was "stalked," "harassed," and had her "job assignments switched to place her in more dangerous or difficult work situations by either Lewis or Philpot." [Doc. 72 at 22]. She also alleges that she "encountered [an] additional adverse action[] after she filed her EEOC charge" of being "deemed qualified" for an inventory position within the Department but "never [being] allowed to interview for the position." [<u>Id.</u> at 22-23].

As an initial matter, the Court will not consider Plaintiff's allegation that she was retaliated against when she was deemed

34

qualified for an open inventory position in the Department but was not given an interview for it. See [Doc. 72 at 22-23]. This allegation does not appear in the complaint, and appears to have been raised for the first time in Plaintiff's summary judgment response. The law of this Circuit, however, forbids a plaintiff from amending her pleadings via arguments made in summary judgment briefs. See Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) (having proceeded through discovery without seeking to amend complaint to reflect new theory of cause of action, plaintiff "was not entitled to raise it in the midst of summary judgment"); Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Further, even if this allegation had been properly raised, the Court cannot consider the allegation because Plaintiff provides no citation to any evidence supporting this allegation. Nor does her Statement of Material Facts state that she was qualified for the open inventory position or that she was not given an interview. The Court "ha[s] neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or defense." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal citation and quotation omitted). Because Plaintiff has failed to carry her burden of offering more than a "scintilla of

35

evidence" in support of her position on this allegation, <u>Anderson</u>, 477 U.S. at 252, **IT IS RECOMMENDED** that summary judgment be **GRANTED** as to Plaintiff's claim for retaliation under the participation clause, insofar as the claim relates to her allegation that she was denied an interview for an open inventory position.

As for Plaintiff's allegation of being stalked, harassed, and having her job assignments changed by Mr. Lewis or Mr. Philpot, this claim is also due to be dismissed. Plaintiff's filing of the EEOC charge constituted protected activity. <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.</u>, 555 U.S. 271, 276 (2009). Moreover, the undersigned will assume, for the purposes of this report, that the challenged actions constituted adverse retaliatory actions.[13] However, Plaintiff has not shown the existence of any causal connection between the filing of the EEOC charge and the adverse actions.

To show a causal connection, a plaintiff must present evidence that the protected activity and the adverse actions were "not wholly

---

[13]     Eleventh Circuit precedent suggests that, under <u>Burlington</u>, "it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse.'" <u>Crawford v. Carroll</u>, 529 F.3d 961, 974 n.13 (11th Cir. 2008) (citing <u>Burlington</u>, 548 U.S. at 71).

In this case, one of the "dangerous" incidents Plaintiff alleges occurred after the filing of her EEOC charge was her assignment by Mr. Lewis to operate a chain saw, despite her lack of training. [Pl's SMF ¶¶ 102-03]. The undersigned finds that a reasonable employee might find this to be materially adverse. Accordingly, the undersigned will assume that Plaintiff has met this light burden.

unrelated." Brungart v. BellSouth Telecommc'ns, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)); accord Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999); Goldsmith v. City of Atmore, 996 F.3d 1155, 1163 (11th Cir. 1993). A plaintiff satisfies this causation element by providing sufficient evidence that the decisionmaker knew of the protected expression and that there was a close temporal proximity between this knowledge and the adverse action. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Shannon v. Bellsouth Telecommc'ns, Inc., 292 F.3d 712, 716 (11th Cir. 2002); Gupta, 212 F.3d at 590.

Though causation is shown where an employee files an EEOC charge and a series of adverse actions commences "almost immediately after management learn[s]" of the filing of the charge, Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998), knowledge is not imputed to an employee's supervisors or coworkers. Watkins v. Sec'y Dept. of Homeland Sec., 401 F. App'x 461, 468 (11th Cir. 2010) (causal connection was not shown where, based on the summary judgment record, "only [a non-decisionmaker] knew" about the plaintiff's protected activity) (citing Brungart, 231 F.3d at 799-800 (declining to adopt an "imputed knowledge" theory that knowledge possessed by others is imputed to a decisionmaker)).

In the case at hand, Plaintiff has provided no dates in her brief

37

or in her Statement of Material Facts for the alleged actions by Mr. Lewis and Mr. Philpot after she filed her EEOC charge. Moreover, even if she had set forth dates that were sufficient to show temporal proximity, she has pointed to no evidence - nor has she even alleged - that Mr. Lewis or Mr. Philpot knew of the filing of her EEOC charge when such actions occurred. Accordingly, "nothing . . . [in the] materials before the court would permit a jury to find" that the decisionmakers had notice of Plaintiff's protected activity of filing the EEOC charge. Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). "A decision maker cannot have been motivated to retaliate by something unknown to him," Brungart, 231 F.3d at 799, and a jury finding that the decisionmaker was aware of the plaintiff's protected activity "must be supported by reasonable inferences from the evidence, not mere speculation." Clover, 176 F.3d at 1355 (no causal connection even where evidence raised inference that decisionmaker knew defendant company was investigating another employee for sexual harassment because plaintiff presented no evidence that decisionmaker knew of plaintiff's *participation in the EEOC investigation* of alleged harasser); accord Lippert v. Cmty. Bank, Inc., 438 F.3d 1275, 1281 (11th Cir. 2006) (noting that the court must decide "whether or not there are reasonable inferences from the evidence such that a reasonable jury could conclude that the decision-maker knew" that the plaintiff had

38

engaged in the protected activity); <u>Morris v. Potter</u>, 251 F. App'x 667, 669 (11th Cir. 2007) (no causal connection shown where plaintiff "failed to provide sufficient evidence that her supervisors had knowledge of her protected expression"). Here, because Plaintiff has failed to show that Mr. Philpot or Mr. Lewis knew that she had filed the EEOC charge, Plaintiff cannot show a causal connection.

For these reasons, the undersigned finds that Plaintiff has not shown sufficient evidence that she was retaliated against based upon the filing of her EEOC charge. Although all reasonable inferences must be drawn in the non-moving party's favor at this stage of the litigation, <u>Anderson</u>, 477 U.S. at 255, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1184 (11th Cir. 2003) (citing <u>Celotex</u>, 477 U.S. at 322). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find . . . by a preponderance of the evidence that plaintiff is entitled to a verdict." <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Cabrera v. Sec'y, Dep't of Transp.</u>, No. 11-13462, 2012 WL 1537921 at *3 (11th Cir. May 3, 2012) (granting summary judgment to defendant where plaintiff failed to present evidence "that would adequately support his . . .

39

retaliation claim[]" aside from "nonspecific and conclusory statements"). Because Plaintiff has failed to carry her burden of offering more than a "scintilla of evidence" in support of her position, <u>Anderson</u>, 477 U.S. at 252, a reasonable jury could not find that Plaintiff was retaliated against because of the filing of her EEOC charge. Therefore, **IT IS RECOMMENDED** that summary judgment be **GRANTED** as to Plaintiff's claim for retaliation under the participation clause, insofar as the claim relates to her allegations of retaliatory conduct by Defendant following the filing of her EEOC charge in January of 2009.

## VI.
## Conclusion

In conclusion, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, [Doc. 60], be **GRANTED**. Specifically, the undersigned finds that Plaintiff has not made a sufficient evidentiary showing of retaliation under Title VII for her protected activity under the participation clause or under the opposition clause of 42 U.S.C. § 2000e(3)(a). Further, because Plaintiff has abandoned her claim for punitive damages, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to that claim.

**SO REPORTED AND RECOMMENDED**, this 1st day of August, 2012.

s/ *E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

40